## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------------ X

|  |  |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION | : 3:09-md-02100-DRH-CJP |
|  | : MDL No. 2100 |
| ------------------------------------------------------- | : |
|  | : Judge David R. Herndon |
| TAMMY ASKLUND, ALEXEA RESNER, and | : COMPLAINT AND JURY DEMAND |
| KELLY and KRISTEN THOMPSON, individually and as natural parents and guardians of minor, SAMANTHA THOMPSON, | : |
|  | : Civil Action No.: 3:11-cv-10358-DRH-PMF |
| Plaintiffs | : |
|  | : |
| vs. | : |
|  | : |
| BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER SCHERING PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, BAYER AG, BARR LABORATORIES, INC., and TEVA PHARMACEUTICALS USA, INC. | : |
|  | : |
|  | : |
| Defendants. | |

------------------------------------------------------------------ X

Plaintiffs, by their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., on behalf of themselves individually, upon information and belief, at all times hereinafter mentioned, allege as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over these actions pursuant to 28 U.S.C. § 1332, because the amount in controversy as to each Plaintiffs' individual claims exceeds $75,000.00,

exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the states in which the named Plaintiffs reside.

2.      Plaintiffs are filing this Complaint as permitted by Case Management Order #9 issued by Judge David R. Herndon of this Court. Plaintiffs state that but for that Order permitting direct filing into the Southern District of Illinois, Plaintiffs would have filed their cases in the following United States District Courts:

  a.  Plaintiff Tammy Asklund in the United States District Court for the Western District of Texas;

  b.  Plaintiff Alexea Resner in the United States District Court for the Northern District of Illinois; and

  c.  Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, in the United States District Court for the Eastern District of Texas.

3.      Therefore, Plaintiffs respectfully request that at the time of transfer of this action back to the trial court for further proceedings Plaintiffs' cases be transferred to the United States District Courts as set forth above and as ordered in Case Management Order #9.

4.      This Court has personal jurisdiction over Defendants consistent with the United States Constitution and MDL No. 2100 as Plaintiffs' claims arise out of Defendants' transaction of business and the commission of tortious acts within the States of Illinois and Texas and by virtue of Defendants' substantial, continuous and systematic contacts with the States of Illinois and Texas unrelated to Plaintiffs' claims.

**PARTY PLAINTIFF TAMMY ASKLUND**

5.      Plaintiff, Tammy Asklund, is a citizen of the United States of America, and is a resident of Travis County, Texas.

6.      Plaintiff, Tammy Asklund, used Yasmin from approximately March 2005 through July 2008, then switched to using Ocella from approximately October 2008 through April 3, 2009, at which time she was diagnosed with a transverse and sigmoid sinus thrombosis.

7.      As a result of using Defendants' Yasmin and Ocella, Plaintiff Tammy Asklund, was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

8.      Plaintiff, Tammy Asklund, was using Ocella at the time of her injuries.

9.      Defendants' Yasmin and Ocella caused the injuries and damages sustained by Plaintiff, Tammy Asklund.

## PARTY PLAINTIFF ALEXEA RESNER

10.      Plaintiff, Alexea Resner, is a citizen of the United States of America, and is a resident of Kendall County, Illinois.

11.      Plaintiff, Alexea Resner, used Yasmin from approximately May 2008 through July 2008, then switched to using Ocella from August 2008 through March 9, 2009, at which time she was diagnosed with a pulmonary embolism.

12.      As a result of using Defendants' Yasmin and Ocella, Plaintiff Alexea Resner, was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

13.      Plaintiff, Alexea Resner was using Ocella at the time of her injuries.

14.      Defendants' Yasmin and Ocella caused the injuries and damages sustained by Plaintiff, Alexea Resner.

## PARTY PLAINTIFFS KELLY AND KRISTEN THOMPSON, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR DAUGHTER SAMANTHA THOMPSON

15.      Plaintiffs Kelly and Kristen Thompson are the natural parents and guardians of minor Samantha Thompson.

3

16.     Plaintiffs Kelly and Kristen Thompson, together with their minor daughter Samantha Thompson, are citizens of the United States of America, and residents of Harrison County, Texas.

17.     Samantha Thompson, used Yaz from December 2008 through July 2009, and then switched to using Ocella from August to September 2009.  However, Samantha Thompson switched back to using Yaz in September 2009, and continued to use Yaz until October 2009 when she learned of the harm caused by Yasmin, Yaz, and Ocella as described herein

18.     As result of using Defendants' Yaz and Ocella, Samantha Thompson, was caused to develop biliary dyskinesia, which required her to have her gallbladder removed on September 8, 2009, and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

19.     Defendants' Yaz and Ocella caused the injuries and damages sustained by Samantha Thompson.

## PARTY DEFENDANTS

20.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

21.     Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

22.     Upon information and belief, at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. has transacted and conducted business in the

State of Illinois and in the State of Texas, and derived substantial revenue from interstate commerce.

23.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. expected or should have expected that its acts would have consequences within the United States of America, in the State of Illinois, and in the State of Texas, and derived substantial revenue from interstate commerce.

24.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application No. 21-676 for YAZ.

25.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. markets YAZ and Yasmin in the United States.

26.     Upon information and belief, Defendant BAYER SCHERING PHARMA AG is a pharmaceutical company domiciled in Germany.

27.     Defendant BAYER SCHERING PHARMA AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

28.     Upon information and belief, Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

29.     Upon information and belief, Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

30.     Upon information and belief, Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

31.     Defendant BAYER SCHERING PHARMA AG manufactures drospirenone and ethinyl estradiol, the progestin and estrogen contained in YAZ, Yasmin and Ocella.

32.     Upon information and belief, Defendant BAYER SCHERING PHARMA AG has transacted and conducted business in the State of Illinois and the State of Texas, and derived substantial revenue from interstate commerce.

33.     Upon information and belief, Defendant BAYER SCHERING PHARMA AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Illinois, and in the State of Texas, and derived substantial revenue from interstate commerce.

34.     Upon information and belief, and at all relevant times Defendant BAYER SCHERING PHARMA AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

35.     Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

36.     Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

37.     At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug YAZ/Yasmin.

6

38.     At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the State of Illinois and the State of Texas, by selling and distributing its products in the State of Illinois and the State of Texas, and engaged in substantial commerce and business activity in the State of Illinois and the State of Texas.

39.     Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New York.

40.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the State of Illinois and the State of Texas, and derived substantial revenue from interstate commerce.   Defendant BAYER CORPORATION is the sole member of Defendant BAYER HEALTHCARE LLC and as such for purposes of establishing diversity of citizenship, Defendant BAYER HEALTHCARE LLC is a citizen of Indiana and Pennsylvania.

41.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America, in the State of Illinois, and the State of Texas, and derived substantial revenue from interstate commerce.

42.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

43.     Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER

CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER SCHERING PHARMA AG.

44. Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the State of Illinois and the State of Texas, and derived substantial revenue from interstate commerce.

45. Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Illinois, and the State of Texas, and derived substantial revenue from interstate commerce.

46. Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER SCHERING PHARMA AG.

47. Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

48. Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

49. Upon information and belief, and at all relevant times Defendant BAYER AG is the parent/holding company of all other named Defendants.

50. Upon information and belief, at all relevant times, Defendant BAYER AG has transacted and conducted business in the State of Illinois and the State of Texas, and derived substantial revenue from interstate commerce.

51.     Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Illinois, and the State of Texas, and derived substantial revenue from interstate commerce.

52.     Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

53.     Defendants, BAYER HEALTCHCARE PHARMACEUTICALS, INC., BAYER SCHERING PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG shall, hereinafter, be collectively referred to as "Bayer" or "Defendants."

54.     Defendant Barr Laboratories, Inc. is a Delaware corporation with it principal place of business located at 225 Summit Avenue, Montvale, New Jersey 07645.

55.     Barr Laboratories, Inc. is a division of Teva Pharmaceutical Industries Ltd., one of the largest generic pharmaceutical companies in the world.

56.     Defendant Barr Laboratories, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly though third parties or related entities, its products, including the prescription drug Ocella, which is a generic form of Yasmin.

57.     At all relevant times, Defendant Barr Laboratories, Inc. conducted regular and sustained business in the State of Illinois and the State of Texas by selling and distributing its products in the State of Illinois and the State of Texas and engaged in substantial commerce and business activity in the State of Illinois and the State of Texas.

58.     Defendant Teva Pharmaceuticals USA, Inc. is a Delaware corporation with its principal place of business located at 1090 Horsham Road, North Wales, Pennsylvania 19454.

59.     Teva Pharmaceuticals USA, Inc. is a wholly-owned subsidiary of Teva Pharmaceuticals Industries Ltd. and is the company's operating business entity for the North American region and throughout the United States of America.

60.     Defendant Teva Pharmaceuticals USA, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly though third parties or related entities, its products, including the prescription drug Ocella, which is a generic form of Yasmin.

61.     Defendant Teva Pharmaceutical USA, Inc. has listed Ocella as one of its products on its website (www.tevausa.com) and in its Fall 2009 Product Catalog.

62.     At all relevant times, Defendant Teva Pharmaceuticals USA, Inc. conducted regular and sustained business in the State of Illinois and the State of Texas by selling and distributing its products in the State of Illinois and the State of Texas and engaged in substantial commerce and business activity in the State of Illinois and the State of Texas.

63.     Defendants Barr Laboratories, Inc. and Teva Pharmaceuticals USA, Inc. are collectively referred to herein as "Barr" or "Barr Defendants."

## **NATURE OF THE CASE**

### **Bayer's Combined Oral Contraceptives – Yasmin and Yaz**

64.     Yasmin and Yaz are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.  Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

65.     Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

**Yasmin and Yaz Contain a "Fourth Generation" Progestin**

66.     The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol.  Both products contain 3 milligrams of drospirenone.

67.     Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

68.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

69.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

70.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the

FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

71.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

72.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

73.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

74.     One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

75.     Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

76.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

77.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

78.     Additionally, a dangerous effect of drospirenone is that it acts as a diuretic, which travels into the kidney, and blocks the aldosterone receptors. Aldosterone is a hormone that increases the reabsorption of sodium and water and the secretion of potassium in the kidneys, resulting in dehydration. Dehydration, may lead to the formation of gallstones. Blocking the aldosterone receptor may also increase the levels of cholesterol in the blood. An excess of cholesterol, calcium and phosphate in the gallbladder reduces gallbladder emptying and results in gallbladder disease.

79.     Upon information and belief, Defendants knew or should have known that the use of drospirenone in Yasmin and Yaz presents an increased risk of gallbladder disease, which often requires surgical removal of the gallbladder.

80.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

81.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

82.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

83.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

13

84.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

85.     Some deaths reported occurred in women as young as 17 years old.

86.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

87.     Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

88.     However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

89.     For example, prior to its integration with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

90.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

91.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

92.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the more serious condition of premenstrual dysphoric disorder or "PMDD."

93.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

94.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

95.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

96.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

97.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

**Bayer's Relationship with Barr Laboratories, Inc.
and Ocella, the Generic Form of Yasmin**

98.     Defendants Barr Laboratories, Inc. and Teva Pharmaceuticals USA, Inc. distribute, supply, sell, market, and/or introduce into interstate commerce, either directly or

indirectly through third parties or related entities, the prescription oral contraceptive Ocella, which is the generic form of Yasmin.

99.    According to Bayer's 2008 Annual Report, in April of 2005 Bayer filed suit against Barr Laboratories, Inc. alleging patent infringement by Barr for the intended generic version of Yasmin.   In response, Barr Laboratories, Inc. filed a counterclaim against Bayer seeking to invalidate Bayer's patent for Yasmin.   In March of 2008, the U.S. District Court for the District of New Jersey decided the matter and invalidated Bayer's patent for Yasmin.

100.    Although Bayer appealed the federal court's ruling, in June of 2008 Bayer and Barr Laboratories entered into a supply and licensing agreement for a generic version of Yasmin covering the United States.   Under the agreement, Bayer manufactures and supplies Barr with a generic equivalent of Yasmin, which Barr markets solely in the United States under the name Ocella.   In return, Barr pays Bayer a fixed percentage of its revenues from Ocella sales.

101.    Bayer ultimately lost its appeal on August 5, 2009, when the United States Court of Appeals for the Federal Circuit entered its opinion upholding the decision of the District of New Jersey and confirming the invalidity of Bayer's patent for Yasmin.

102.    Bayer continues to manufacture the generic form of Yasmin for Barr, which is marketed and sold by the Barr Defendants under the generic name Ocella.

103.    The patient package insert and warnings label for Ocella bears the name Barr Laboratories, Inc.; however it is essentially the same as the patient package insert and warnings label for Yasmin.

104.    According to the publication Drug Topics, in 2008, while Yaz was ranked 28th and Yasmin ranked 56th, Ocella was ranked 96th among the top 200 branded drugs by total prescriptions.

105.   Therefore, both the Bayer Defendants and the Barr Defendants have benefited and will continue to benefit economically in light of Ocella's large market share, and they bear liability for any harm caused by the product.

106.   Additionally, pursuant to an agreement reached in June of 2008, Bayer has agreed to grant Barr a license to market a generic version of Yaz in the United States starting in July 2011.  Under the agreement, Bayer will supply Barr with the product which Barr will market under a generic name.

**Plaintiff Tammy Asklund's Use of Yasmin and Ocella and Resulting Injuries**

107.   As a result of Defendants' claim regarding the effectiveness and safety of Yasmin and Ocella, Plaintiff Tammy Asklund's medical provider prescribed and Tammy Asklund used Yasmin from approximately March 2005 through July 2008, and then she switched to using Ocella in approximately October 2008. She continued using Ocella until April 3, 2009, at which time she diagnosed with a transverse and sigmoid sinus thrombosis.

108.   Plaintiff, Tammy Asklund, was hospitalized for five days from April 3, 2009 through April 7, 2009.

109.   As a direct and proximate result of using Yasmin and Ocella, Plaintiff Tammy Asklund suffered the injuries described above.

110.   Prior to Plaintiff Tammy Asklund's use of Yasmin and Ocella, Defendants knew or should have known that use of Yasmin and Ocella created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

111.   Therefore, at the time Plaintiff Tammy Asklund used Yasmin and Ocella, Defendants knew or should have known that the use of Yasmin and Ocella created an increased

risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gall stones and gallbladder disease, and even death.

112.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin and Ocella, Defendants failed to adequately warn Plaintiff Tammy Asklund and/or her health care providers of said serious risks before she used the products.

113.    Had Plaintiff Tammy Asklund and/or her heath care providers known of the increased risks and dangers associated with Yasmin and Ocella, she would not have used the products and would not have suffered from a transverse and sigmoid sinus thrombosis.

114.    As a direct and proximate result of her use of Yasmin and Ocella, Plaintiff Tammy Asklund has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering from a transverse and sigmoid sinus thrombosis, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

115.    Further, as a direct and proximate result of her use of Yasmin and Ocella, Plaintiff Tammy Asklund has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

116.    Plaintiff Tammy Asklund has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yasmin and Ocella.

**Plaintiff Alexea Resner's Use of Yasmin and Ocella and Resulting Injuries**

117.    As a result of Defendants' claim regarding the effectiveness and safety of Yasmin and Ocella, Plaintiff Alexea Resner's medical provider prescribed and Alexea Resner used Yasmin from May 2008 through July 2008, and then she switched to using Ocella in August 2008. She continued using Ocella until March 9, 2009, at which time she was diagnosed with a pulmonary embolism.

118.    Plaintiff, Alexea Resner, was hospitalized for seven days from March 9, 2009 through March 15, 2009.

119.    As a direct and proximate result of using Yasmin and Ocella, Plaintiff Alexea Resner suffered the injuries described above.

120.    Prior to Plaintiff Alexea Resner's use of Yasmin and Ocella, Defendants knew or should have known that use of Yasmin and Ocella created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

121.    Therefore, at the time Plaintiff Alexea Resner used Yasmin and Ocella, Defendants knew or should have known that the use of Yasmin and Ocella created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gall stones and gallbladder disease, and even death.

122.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin and Ocella, Defendants failed to adequately warn Plaintiff Alexea Resner and/or her health care providers of said serious risks before she used the products.

123.    Had Plaintiff Alexea Resner and/or her heath care providers known of the increased risks and dangers associated with Yasmin and Ocella, she would not have used the products and would not have suffered a pulmonary embolism.

124.    As a direct and proximate result of her use of Yasmin and Ocella, Plaintiff Alexea Resner has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering a pulmonary embolism, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

125.    Further, as a direct and proximate result of her use of Yasmin and Ocella, Plaintiff Alexea Resner has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

126.    Plaintiff Alexea Resner has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yasmin and Ocella.

### Plaintiffs Kelly and Kristen Thompson's Minor Daughter Samantha Thompson's Use of Yaz and Ocella and Resulting Injuries

127.    As a result of Defendants' claim regarding the effectiveness and safety of Yaz and Ocella, Plaintiffs Kelly and Kristen Thompson's minor daughter Samantha Thompson's medical provider prescribed and Samantha Thompson used Yaz from approximately December 2008 through July 2009, she then switched to using Ocella from August 2009 to September 2009. Samantha Thompson switched back to Yaz in September 2009, and continued using Yaz until October 2009.

128.     Samantha Thompson, was diagnosed with biliary dyskinesia, which required removal of her gallbladder on September 8, 2009.

129.     At the time Samantha Thompson underwent surgery to have her gallbladder removed, she did not know and had no reason to believe that her gallbladder disease was caused by her use of Yaz and Ocella.  As such, she continued to use Yaz and Ocella through October 2009.

130.     As a direct and proximate result of using Yaz and Ocella, Samantha Thompson suffered the injuries described above.

131.     It was not until late October 2009, when Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson became aware of information on television concerning the increased risks of injury, including gallbladder injury, associated with Yaz, Yasmin, and Ocella, that they were first apprised that Defendants' products and Defendants' wrongful conduct as described herein could have been the cause of Samantha Thompson's injuries.

132.     Prior to Samantha Thompson's use of Yaz and Ocella, Defendants knew or should have known that use of Yaz and Ocella created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

133.     Therefore, at the time Samantha Thompson used Yaz and Ocella, Defendants knew or should have known that the use of Yaz and Ocella created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gall stones and gallbladder disease, and even death.

134.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz and Ocella, Defendants failed to adequately warn Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and/or her health care providers of said serious risks before she used the products.

135.     Had Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and/or her heath care providers known of the increased risks and dangers associated with Yaz and Ocella, she would not have used the products and would not have developed biliary dyskinesia and undergone surgery to have her gallbladder removed.

136.     As a direct and proximate result of Samantha Thompson's use of Yaz and Ocella, she has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to developing biliary dyskinesia and undergoing surgery to have her gallbladder removed, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

137.     Further, as a direct and proximate result of Samantha Thompson's use of Yaz and Ocella, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson have suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

138.     Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson have also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of Samantha Thompson's use of Yaz and Ocella.

## PLAINTIFF TAMMY ASKLUND'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**

139.   Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

140.   Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin and Ocella.

141.   The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purpose for which they were intended, and/or did not meet the reasonable expectations of an ordinary consumer.

142.    The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction as described at the time they left the Defendants' control.

143.   As a direct and proximate result of Plaintiff Tammy Asklund's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

144.   Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Defect in Design or Formulation

145.   Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

146.   Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin and Ocella.

147.   The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their design such that they were unreasonably dangerous, were not fit for the ordinary purpose for which they were intended, and/or did not meet the reasonable expectations or an ordinary consumer.

148.   At the time Defendants manufactured, designed, distributed, sold, and/or supplied the Yasmin and Ocella oral contraceptives into the stream of commerce, a safer, more practical, alternative design was available.

149.   The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants, were defective in design as described above at the time they left the Defendants' control.

150.   As a direct and proximate result of Plaintiff Tammy Asklund's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

151.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

152.    Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

153.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin and Ocella.

154.    The Yasmin and Ocella oral contraceptives manufactured and supplied by Defendants were defective due to inadequate warning or instruction, because Defendants knew or should have known that the products were unreasonably dangerous in that they created a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Tammy Asklund, and Defendants failed to adequately warn consumers and/or their health care providers of such increased risk.

155.    The Yasmin and Ocella oral contraceptives manufactured and supplied by Defendants were also defective due to inadequate post-marketing warning or instruction, because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin and Ocella, Defendants failed to provide adequate warning to consumers and/or their health care providers of the products, knowing the products could cause serious injury and death.

156.    As a direct and proximate result of Plaintiff Tammy Asklund's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by

Defendants, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

157.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

### Negligence

158.    Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

159.    Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Yasmin and Ocella into the stream of commerce, including a duty to ensure that its products did not pose a significantly increased risk of bodily harm and adverse events.

160.    Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin and Ocella into interstate commerce in that Defendants knew, or should have known, that the products caused such significant bodily harm or death and was not safe for use by consumers.

161.    Defendants also failed to exercise ordinary care in the labeling of Yasmin and Ocella and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yasmin and Ocella.

162.    Despite the fact that Defendants knew or should have known that Yasmin and Ocella posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin and Ocella for use by consumers.

163.    Defendants knew or should have known that consumers, such as Plaintiff Tammy Asklund, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

164.    As a direct and proximate result of Defendants' negligence, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

165.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

166.    Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

167.    Defendants expressly warranted that Yasmin and Ocella were safe and effective prescription oral contraceptives.

168.    The Yasmin and Ocella birth control products manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to consumers who used the products when taken in the recommended dosages.

169.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

170.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty

171.   Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

172.   At the time Defendants manufactured, marketed, sold, and distributed Yasmin and Ocella, Defendants knew of the use for which Yasmin and Ocella were intended and impliedly warranted Yasmin and Ocella to be of merchantable quality, fitness, and safe for such use.

173.   Plaintiff Tammy Asklund and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yasmin and Ocella were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

174.   Contrary to the implied warranty, Defendants' products Yasmin and Ocella were not of merchantable quality or safe for their intended use, because they were unreasonably dangerous as described herein.

175.   As a direct and proximate result of Defendants' breach of warranty, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

176.   Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

177.   Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

28

178.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and Ocella and, while engaged in the course of such business, made representations to Plaintiff Tammy Asklund and her physician regarding the character and/or quality of Yasmin and Ocella for guidance in their decision to select Yasmin and Ocella for Plaintiff's use.

179.    Specifically, Defendants represented that their products were just as safe, and just as effective or more effective, than other birth control products on the market.

180.    Defendants' representations regarding the character or quality of Yasmin and Ocella were untrue.

181.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its products Yasmin and Ocella created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

182.    Defendants negligently and/or intentionally misrepresented or omitted this information in its products labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

183.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff Tammy Asklund and her physician.

184.    Plaintiff Tammy Asklund and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the products.  Plaintiff Tammy Asklund reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin and Ocella were just as safe and effective as other types of oral contraceptives for human

consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the products.

185.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiff Tammy Asklund suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

186.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## EIGHTH CAUSE OF ACTION

### Violation of the Texas Deceptive Trade Practices Act
### Tex. Bus. & Com. Code Ann. § 17.46(a) *et seq*.

187.    Plaintiff Tammy Asklund incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

188.    Plaintiff Tammy Asklund is a consumer as defined in the Texas Deceptive Trade Practices Act and is entitled to protection under the Act from unfair or deceptive acts or practices involving trade or commerce.

189.    Defendants designed, manufactured, tested, marketed, distributed, or otherwise placed their products Yasmin and Ocella into the steam of trade or commerce.

190.    Defendants knew, or in the exercise of reasonable care should have known, that Yasmin and Ocella were not reasonably safe as designed, manufactured, tested, marketed and distributed.

191.    Defendants knew that Yasmin and Ocella carried the increased risk of serious adverse events, including injuries such as blood clots, pulmonary emboli, strokes, and damage to the gallbladder.

192.    Defendants knew that the heightened risk of serious adverse events, including injuries such as blood clots, pulmonary emboli, strokes, and damage to the gallbladder was important information to consumers, such as Plaintiff Tammy Asklund.

193.    Defendants committed deceptive acts, in violation of the Texas Deceptive Trade Practices Act, as described herein, including but not limited to failing to disclose the heightened risk of the serious adverse events described herein.

194.    Defendants' failure to disclose the heightened risk of the serious adverse events described above was likely to cause substantial injury to consumers, and did cause substantial injury to Plaintiff Tammy Asklund.

195.    By reason of the foregoing, Plaintiff Tammy Asklund was and will be caused bodily injury, pain, suffering, and economic loss.

196.    Accordingly, Plaintiff Tammy Asklund is entitled to any and all relief provided under the Texas Deceptive Trade Practices Act.

### PLAINTIFF ALEXEA RESNER'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**

197.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

198.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin and Ocella.

31

199.    The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer, Plaintiff Alexea Resner, without any alterations or changes.

200.    The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the Defendants' control, in that the products deviated from design specification, formula, or performance standards of the manufacturer, such that they were unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

201.    As a direct and proximate result of Plaintiff Alexea Resner's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

202.    Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.   As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## SECOND CAUSE OF ACTION

**Strict Products Liability**
**Defect in Design or Formulation**

203.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

204.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin and Ocella.

205.    The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach consumers such as Plaintiff Alexea Resner without any alterations or changes.

206.    The Yasmin and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their design or formulation in that, when they left the Defendants' control, the foreseeable risks of the products exceeded the benefits associated with their design or formulation, and/or the products were more dangerous than an ordinary consumer would expect.

207.    The foreseeable risks associated with the design or formulation of Yasmin and Ocella include, but are not limited to, the fact that the design or formulation of Yasmin and Ocella is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

208.    As a direct and proximate result of Plaintiff Alexea Resner's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

209.    Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## THIRD CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Inadequate Warning

210.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

211.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin and Ocella.

212.    The Yasmin and Ocella oral contraceptives manufactured and supplied by Defendants were defective due to inadequate warning or instruction, because at the time the products left their control Defendants knew or should have known that the products were unreasonably dangerous in that they created a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Alexea Resner, and Defendants failed to adequately warn consumers and/or their health care providers of such increased risk.

213.    The Yasmin and Ocella oral contraceptives manufactured and supplied by Defendants were also defective due to inadequate post-marketing warning or instruction, because after the products left their control, Defendants became aware of or in the exercise of ordinary care should have known that the products posed a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Alexea Resner and failed to take reasonable steps to provide adequate warnings or instructions to consumers and/or their health care providers of such increased risk.

214.    As a direct and proximate result of Plaintiff Alexea Resner's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

215.    Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

216.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

217.    Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Yasmin and Ocella into the stream of commerce, including a duty to ensure that their products did not pose a significantly increased risk of bodily harm and adverse events.

218.    Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin and Ocella into interstate commerce in that Defendants knew, or should have known, that the products caused such significant bodily harm or death and were not safe for use by consumers.

219.    Defendants also failed to exercise ordinary care in the labeling of Yasmin and Ocella and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yasmin and Ocella.

220.    Despite the fact that Defendants knew or should have known that Yasmin and Ocella posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin and Ocella for use by consumers.

221.    Defendants knew or should have known that consumers, such as Plaintiff Alexea Resner, and their physicians would rely on any representations made regarding Yasmin in deciding to prescribe or use Ocella.

222.     Defendants knew or should have known that consumers, such as Plaintiff Alexea Resner, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

223.     As a direct and proximate result of Defendants' negligence, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

224.     Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

225.     Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

226.     Defendants expressly warranted that Yasmin and Ocella were safe and effective birth control products.

227.     The Yasmin and Ocella birth control products manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to consumers who used the products when taken in the recommended dosages.

228.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

229.     Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty

230.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

231.    At the time Defendants manufactured, marketed, sold, and distributed Yasmin and Ocella, Defendants knew of the use for which Yasmin and Ocella were intended and impliedly warranted Yasmin and Ocella to be of merchantable quality, fitness, and safe for such use.

232.    Plaintiff Alexea Resner and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yasmin and Ocella were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

233.    Contrary to the implied warranty, Defendants' products Yasmin and Ocella were not of merchantable quality or safe for their intended use because they were unreasonably dangerous as described herein.

234.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

235.    Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

236.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

237.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and Ocella, and while engaged in the course of such business, made representations to Plaintiff and her physician regarding the character and/or quality of Yasmin and Ocella for guidance in their decision to select Yasmin and Ocella for Plaintiff Alexea Resner's use.

238.    Specifically, Defendants represented that their products were just as safe, and just as effective or more effective, than other birth control products on the market.

239.    Defendants' representations regarding the character or quality of Yasmin and Ocella were untrue.

240.    Defendants had actual knowledge based upon studies, published reports and clinical experience that their products Yasmin and Ocella created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

241.    Defendants negligently and/or intentionally misrepresented or omitted this information in their products labeling, promotions and advertisements and instead labeled, promoted and advertised their products as just as safe, safer, and/or more effective when compared to other oral contraceptives in order to avoid losses and sustain profits in their sales to consumers.

242.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff Alexea Resner and her physician.

243.    Plaintiff Alexea Resner and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in their labeling, advertisements, and promotions concerning the serious risks posed by the products.  Plaintiff Alexea Resner reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin and Ocella were just as safe and effective as other types of oral contraceptives for human

consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the products.

244.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Alexea Resner suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

245.    Defendants acted willfully or with gross negligence indicating a wanton disregard for the rights of Plaintiff Alexea Resner and others.  As such, Plaintiff reserves the right to amend her complaint to request punitive damages.

## EIGHTH CAUSE OF ACTION

### Violation of Illinois
### Consumer Fraud and Deceptive Business Practices Act

246.    Plaintiff Alexea Resner incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

247.    The Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, ("ICFA") prohibits the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact in the conduct of any trade or commerce and declares such acts or practices as unlawful.

248.    At all times relevant, Defendants violated the ICFA by the use of false and misleading representations or omissions of material fact in connection with the marketing, promotion, and sale of Yasmin and Ocella.  Defendants communicated the purported benefits of Yasmin and Ocella while failing to disclose the serious and dangerous side effects related to the use of Yasmin and Ocella with the intent that consumers, like Plaintiff Alexea Resner, and their

healthcare providers rely upon the misrepresentations and omissions and purchase or prescribe Yasmin and Ocella.

249.   As a result of violating the ICFA, Defendants caused Plaintiff Alexea Resner to be prescribed and to use Yasmin and Ocella, thereby causing sever injuries and damages as previously described herein.

## PLAINTIFFS KELLY AND KRISTEN THOMPSON'S CAUSES OF ACTION, INDIVIDUALLY AND ON BEHALF OF MINOR SAMANTHA THOMPSON

### FIRST CAUSE OF ACTION

**Strict Products Liability
Defective Manufacturing**

250.   Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

251.   Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yaz and Ocella.

252.   The Yaz and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purpose for which they were intended, and/or did not meet the reasonable expectations of an ordinary consumer.

253.   The Yaz and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction as described at the time they left the Defendants' control.

254.   As a direct and proximate result of Samantha Thompson's use of Yaz and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by

Defendants, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

255.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

### SECOND CAUSE OF ACTION

**Strict Products Liability**
**Defect in Design or Formulation**

256.    Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

257.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz and Ocella.

258.    The Yaz and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their design such that they were unreasonably dangerous, were not fit for the ordinary purpose for which they were intended, and/or did not meet the reasonable expectations or an ordinary consumer.

259.    At the time Defendants manufactured, designed, distributed, sold, and/or supplied the Yaz and Ocella oral contraceptives into the stream of commerce, a safer, more practical, alternative design was available.

260.    The Yaz and Ocella oral contraceptives manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants, were defective in design as described above at the time they left the Defendants' control.

261.   As a direct and proximate result of Plaintiff's use of Yaz and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

262.   Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

263.   Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

264.   Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz and Ocella.

265.   The Yaz and Ocella oral contraceptives manufactured and supplied by Defendants were defective due to inadequate warning or instruction, because Defendants knew or should have known that the products were unreasonably dangerous in that they created a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Samantha Thompson, and Defendants failed to adequately warn consumers and/or their health care providers of such increased risk.

266.   The Yaz and Ocella oral contraceptives manufactured and supplied by Defendants were also defective due to inadequate post-marketing warning or instruction, because, after

Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz and Ocella, Defendants failed to provide adequate warning to consumers and/or their health care providers of the products, knowing the products could cause serious injury and death.

267.     As a direct and proximate result of Samantha Thompson's use of Yaz and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

268.     Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

269.     Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

270.     Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Yaz and Ocella into the stream of commerce, including a duty to ensure that its products did not pose a significantly increased risk of bodily harm and adverse events.

271.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz and Ocella into interstate commerce in that Defendants knew, or should

have known, that the products caused such significant bodily harm or death and were not safe for use by consumers.

272.    Defendants also failed to exercise ordinary care in the labeling of Yaz and Ocella and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yaz and Ocella.

273.    Despite the fact that Defendants knew or should have known that Yaz and Ocella posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz and Ocella for use by consumers.

274.    Defendants knew or should have known that consumers, such as Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson, and their physicians would rely on any representations made regarding Yaz, and also Yasmin, in deciding to prescribe or use Ocella.

275.    Defendants knew or should have known that consumers, such as Samantha Thompson, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

276.    As a direct and proximate result of Defendants' negligence, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

277.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

278.    Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

279.    Defendants expressly warranted that Yaz and Ocella were safe and effective prescription oral contraceptives.

280.    The Yaz and Ocella birth control products manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to consumers who used the products when taken in the recommended dosages.

281.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

282.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty

283.    Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

284.    At the time Defendants manufactured, marketed, sold, and distributed Yaz and Ocella, Defendants knew of the use for which Yaz and Ocella were intended and impliedly warranted Yaz and Ocella to be of merchantable quality, fitness, and safe for such use.

285.    Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yaz and Ocella were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

286.    Contrary to the implied warranty, Defendants' products Yaz and Ocella were not of merchantable quality or safe for their intended use, because they were unreasonably dangerous as described herein.

287.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

288.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

289.    Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

290.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz and Ocella and, while engaged in the course of such business, made representations to

Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and her physician regarding the character and/or quality of Yaz and Ocella for guidance in their decision to select Yaz and Ocella for Samantha Thompson's use.

291. Specifically, Defendants represented that their products were just as safe, and just as effective or more effective, than other birth control products on the market.

292. Defendants' representations regarding the character or quality of Yaz and Ocella were untrue.

293. Defendants had actual knowledge based upon studies, published reports and clinical experience that its products Yaz and Ocella created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

294. Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

295. In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to its intended recipients, including Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and her physician.

296. Plaintiffs Kelly and Kristen Thompson, their minor daughter Samantha Thompson, and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the products. Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson reasonably relied upon Defendants' representations to them and/or her health care providers that Yaz and Ocella were just as safe and effective as other types

of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the products.

297.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

298.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted intentionally, fraudulently, maliciously, or with gross neglect suggesting an improper motive so as to warrant the imposition of punitive damages.

### EIGHTH CAUSE OF ACTION

**Violation of the Texas Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code Ann. § 17.46(a) *et seq*.**

299.    Plaintiffs Kelly and Kristen Thompson, individually and on behalf of their minor daughter Samantha Thompson, incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

300.    Samantha Thompson is a consumer as defined in the Texas Deceptive Trade Practices Act and is entitled to protection under the Act from unfair or deceptive acts or practices involving trade or commerce.

301.    Defendants designed, manufactured, tested, marketed, distributed, or otherwise placed their products Yaz and Ocella into the steam of trade or commerce.

302.    Defendants knew, or in the exercise of reasonable care should have known, that Yaz and Ocella were not reasonably safe as designed, manufactured, tested, marketed and distributed.

303.    Defendants knew that Yaz and Ocella carried the increased risk of serious adverse events, including injuries such as blood clots, pulmonary emboli, strokes, and damage to the gallbladder.

304.    Defendants knew that the heightened risk of serious adverse events, including injuries such as blood clots, pulmonary emboli, strokes, and damage to the gallbladder was important information to consumers, such as Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson.

305.    Defendants committed deceptive acts, in violation of the Texas Deceptive Trade Practices Act, as described herein, including but not limited to failing to disclose the heightened risk of the serious adverse events described herein.

306.    Defendants' failure to disclose the heightened risk of the serious adverse events described above was likely to cause substantial injury to consumers, and did cause substantial injury to Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson, as described herein.

307.    By reason of the foregoing, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson were and will be caused bodily injury, pain, suffering, mental anguish, emotional distress, and economic loss, as described herein.

308.    Accordingly, Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson are entitled to any and all relief provided under the Texas Deceptive Trade Practices Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.      For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which these cases will be transferred for trial in accordance with Case Management Order #9 issued by United States District Court Judge David R. Herndon.

2.      Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff Tammy Asklund and Plaintiffs Kelly and Kristen Thompson and their minor daughter Samantha Thompson, in an amount sufficient to punish Defendants and deter future similar conduct.  Plaintiff Alexea Resner reserves the right to amend this complaint to seek punitive damages for Defendants' willful and grossly negligent conduct that indicates a wanton disregard for the rights of consumers;

4.      Awarding all applicable statutory damages of the state whose laws will govern these actions;

5.      Awarding Plaintiffs reasonable attorneys' fees;

6.      Awarding Plaintiffs the costs of these proceedings; and

7.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all issues.

Dated: February 2, 2011

RESPECTFULLY SUBMITTED,

 /s/ Calvin S. Tregre, Jr.
Calvin S. Tregre, Jr.
Janet G. Abaray
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
312 Walnut Street
Suite 2090
Cincinnati, OH 45202
Tel: (513) 852-5600
Fax: (513) 852-5611
ctregre@burgsimpson.com
jabaray@burgsimpson.com


Michael S. Burg
Seth A. Katz
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, Colorado 80112
Tel: (303) 792-5595
Fax: (303) 708-0527
mburg@burgsimpson.com
skatz@burgsimpson.com


**Attorneys for Plaintiffs**